IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMERICAN MUNICIPAL
POWER - OHIO, INC.,
    Plaintiff,

v.

    Case No. 2:07-CV-577
    JUDGE EDMUND A. SARGUS, JR.
    Magistrate Judge Norah McCann King

FIRSTENERGY CORP., et al.,
    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of the Defendants' Motion to Dismiss. (Doc. #8). For the reasons that follow, the motion is granted.

### I.

Plaintiff, American Municipal Power-Ohio, Inc. ["Plaintiff"], brings this action for declaratory judgment against Defendants FirstEnergy Corp. and the Toledo Edison Company regarding certain agreements entered into between the parties. This action was originally filed in the Court of Common Pleas for Franklin County, Ohio and was removed to this Court based on federal question jurisdiction, specifically, the Federal Power Act, 16 U.S.C. § 791a, *et seq*. The Defendants now challenge this Court's subject matter jurisdiction over Plaintiff's Complaint.

Plaintiff is a nonprofit Ohio corporation that provides wholesale power and services to one-hundred twenty member municipal electric systems located in the States of Ohio, Pennsylvania, West Virginia, Virginia and Michigan. (*Complaint* at ¶ 1). Defendant FirstEnergy

is the parent corporation of Toledo Edison. Plaintiff and Toledo Edison entered into a contract on May 1, 1989, referred to as the "Interconnection and Service Agreement." (*Id.* at ¶ 5). The agreement sets forth the terms for interconnection of Plaintiff's members with Toledo Edison's transmission and distribution system as well as the terms of electricity supply. (*Id.*).

FirstEnergy, Toledo Edison and other subsidiaries of FirstEnergy entered into an agreement with Plaintiff on June 6, 1997, referred to as the Merger Settlement Agreement. The agreement set forth terms and conditions under which Plaintiff would withdraw its objections to the merger of Centerior Energy Corporation (which then owned Toledo Edison) and Ohio Edison Company into FirstEnergy, in exchange for certain commitments from FirstEnergy. (*Id.* at ¶ 6). Plaintiff alleges that, following this agreement, the Interconnection and Service Agreement was effectively terminated, except for provisions specifically preserved by the Merger Settlement Agreement. (*Id.*).

On December 14, 2005, FirstEnergy and Toledo Edison sent a letter to Plaintiff notifying Plaintiff of their intent to terminate the Interconnection Agreement. (*Id.* at ¶ 9). Plaintiff then notified Defendants that, to the extent the termination included terminating Schedules A and J of the Interconnection Agreement[1], the notice was allegedly contrary to Section 7(e) of the Merger Settlement Agreement[2]. (*Id.* at ¶ 10).

---

[1]The Schedules set forth rate schedules for different types of services. Schedule A is entitled "Base Capacity and Energy Service;" Schedule J is entitled "Interruptible Base Capacity and Energy Service." (Exhibits A1 and A2 attached to *Complaint*).

[2]This section states:
(e) Except as otherwise set forth herein, the Parties waive any rights they may have to seek termination of Schedules A, B, and J of the [Toledo Edison]/AMP-Ohio Agreement, or further modification of the rates and charges contained in Schedules A, B and J; provided, however, if significant changes in environmental, regulatory or tax laws or regulations or in the interpretation or application of such laws or taxes increase or

2

In its Complaint, Plaintiff alleges that FirstEnergy and Toledo Edison "have failed and refused to rescind the Notice of Termination with respect to Schedules A and J or otherwise acknowledge [Plaintiff's] rights under Section 7(e) of the Merger Settlement Agreement." (*Complaint* at ¶ 11). Plaintiff states that it utilizes the electric capacity and energy provided by Toledo Edison pursuant to Schedules A and J to provide approximately 42 megawatts of electric capacity and associated energy to its member municipal electric systems. In turn, members are allegedly dependent upon the electric capacity and energy supplied to provide a portion of the electric capacity and energy required to serve their respective customers. (*Id.* at ¶ 12).

In this action, Plaintiff seeks a declaration of its rights and Defendants' obligations under the Merger Settlement Agreement "including, but not limited to, a declaration that Defendants may neither terminate Schedule A or J of the Interconnection Agreement nor modify the rates and charges contained therein, except as specifically provided in Section 7(e) of the Merger Settlement Agreement." (*Id.* at ¶ 17).

Defendants move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) on the basis that the claim falls under the exclusive and primary jurisdiction of the

---

decrease [Toledo Edison's] costs either party may seek to change the rates hereunder, and after appropriate approvals, implement such change to the extent approved, but only to the same extent that [Toledo Edison's] rates to its retail customers are changed. Further, notwithstanding the rate freeze agreed to herein or the previous sentence, if the Ohio General Assembly changes the manner in which electric utilities are taxed, any resulting reduction in such taxes shall be used to reduce current rates to reflect such tax reduction. The parties agree to appropriately reflect the changes set forth above in modified rates for purchases under Schedules A, B and J, subject to the FERC's approval pursuant to an appropriate section 205 filing. The application of the rate adjustments pursuant hereto shall not result in rates in excess of fully allocated cost of service rates pursuant to FERC methodology.

Section 7(e), Exhibit B, attached to *Complaint*.

3

Federal Energy Regulatory Commission ["FERC"].

## II.

Fed. R. Civ. P. 12(b)(1) and 12(h)(3) provide for dismissal of a Complaint for lack of subject matter jurisdiction. Such a motion falls within one of two categories: facial attack or factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the sufficiency of the pleading. In considering such a motion, the Court must take the allegations of the Complaint as true and construe them in the light most favorable to the nonmoving party. *Id.* A factual attack challenges the factual existence of jurisdiction. In considering this motion, there is no presumptive truth to the factual allegations set forth in the pleading. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

In considering a factual attack to the Court's subject matter jurisdiction, the Court must resolve disputes by weighing the evidence that gives rise to the controversy to determine whether a factual predicate for subject matter jurisdiction exists. *Id.*; *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). The party opposing a factual attack to subject matter jurisdiction has the burden of proving jurisdiction and may not rest on the allegations made in the pleadings. *Id.* at 269. To resolve the dispute, the Court may consider affidavits, documents and also may conduct a limited evidentiary hearing. *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325.

## III.

At the outset, the Court finds that the motion to dismiss presents a facial attack to the

4

subject matter jurisdiction of this Court[3]. According to Defendants, Plaintiff's claim falls within the exclusive and primary jurisdiction of the FERC. Defendants argue that the complaint does not simply involve interpretation of the Merger Settlement Agreement, but requires interpretation of the FERC Tariff, which sets forth the terms and conditions governing the interconnection of Plaintiff's member municipalities with Defendants' electric transmission and distribution systems.

By way of background, the Court observes that the merger of FirstEnergy companies required FERC approval. (*Affidavit of Michael R. Beiting* at ¶ 6). The approval included Mitigation Measure No. 4, which contained Toledo Edison's commitment to reduce rates for generation services provided by Toledo Edison to Plaintiff under the FERC Tariff in accordance with the terms of the Merger Settlement Agreement. (*Id.*). In order to carry out the commitments of the Merger Settlement Agreement, Toledo Edison and Plaintiff entered into certain amendments to the FERC Tariff in 1998, 1999 and 2000. (*Id.* at ¶¶ 7-9).

Defendants contend that its obligations under Schedules A and J are limited by section 8.01 of the Interconnection and Service Agreement, or FERC Tariff, which states:

> 8.01 This Agreement shall become effective, subject to the provisions of Article 11, on the date on which it is permitted to become effective by the FERC pursuant to Part II of the Federal Power Act without modification or conditions unacceptable to either party; and shall remain in effect through December 31, 2008, and thereafter unless written notice is given by either party to terminate the Agreement at least three years in advance of the termination date proposed by the party. It is agreed that upon the effective date of this Agreement, the Municipal Resale Service Rate Agreement between Toledo and AMP-Ohio dated June 1, 1983 (Toledo Rate Schedule FERC No. 31) and all amendments and supplements

---

[3]The Court notes that Defendants present the affidavit of Michael R. Beiting, associate general counsel to FirstEnergy Corp. in support of their motion. The Court considers the affidavit for purposes of explaining background chronology only.

> thereto shall be terminated and superseded by this Agreement. Except as
> specified in Schedules, nothing contained herein shall be construed as affecting in
> any way the right of Toledo to unilaterally make application to the FERC or such
> other regulatory agency having jurisdiction for a change in rates under Section 205
> of the Federal Power Act and pursuant to the FERC's Rules and Regulations
> promulgated thereunder.

(Exhibit A at 25, attached to *Complaint*). In correspondence to Plaintiff dated December 14, 2005, Defendant Toledo Edison notified Plaintiff of its exercise of the right to terminate the FERC Tariff effective December 31, 2008. (Exhibit C, attached to *Complaint*).

Defendants contend that, through this action, Plaintiff is effectively asking the Court to establish electricity rates for an indefinite period, beginning in 2009. Schedules A and J establish rates and charges for the years 1989 to 2008. According to Defendants, a declaration in this action that Schedules A and J cannot be terminated has no effect because the schedules attached to the FERC Tariff do not provide for rates beyond 2008. Thus, Defendants argue that Plaintiff cannot avoid FERC jurisdiction by characterizing its claim as one for interpretation of the Merger Agreement.

In response, Plaintiff replies that the FERC's exclusive jurisdiction does not extend to all lawsuits related to agreements for the wholesale sale of electricity, even if the agreements are filed with the FERC and become a FERC approved rate schedule or tariff. Plaintiff cites *Portland General Electric Co. v. City of Glendale*, No. 05-1321PK, 2007 WL 1655545 (D. Or. June 1, 2007). There, the City of Glendale and Portland General Electric Company ["PGE"] entered into a Long Term Power Sale and Exchange Agreement for the sale of electricity from 1988 to 2012. The agreement was filed with the FERC. In 2005, a dispute arose as to the interpretation of certain price caps under the agreement. PGE filed suit in federal court and the

City of Glendale moved to dismiss, arguing that the matter was within the exclusive jurisdiction of the FERC. Simultaneously, Glendale Water and Power Company filed an administrative complaint with the FERC regarding the formula used to determine certain energy prices of PGE. The FERC dismissed the complaint on the basis that it had concurrent jurisdiction over the matter in light of the dispute between PGE and the City of Glendale.

As to the challenge to jurisdiction in the district court, the city contended that a declaration interpreting the formulary rates in the parties' agreement would infringe on the FERC's authority to regulate rates and charges in wholesale energy transactions. The district court disagreed.

> To provide the declaratory relief PGE requests, this court will not be required to make any determination of reasonableness. Instead, this court will be called upon to interpret specified contractual provisions of the parties' Agreement, without looking beyond the four corners of the document. Because this court's declaration will neither modify the terms of the Agreement nor evaluate its formulary rates against any standard of fairness, reason, or justice, the interpretation of the contract will not, in itself, constitute an usurpation of any FERC function.

2007 WL 1655545 at *5. The court also observed that the FERC views pure questions of interpretation of FERC-approved contracts as falling within the jurisdiction of district courts. *Id.* at *6 (citations omitted)[4].

In the Court's view, the situation in *Portland Gen. Elec. Co. v. City of Glendale* is distinguishable from the instant case. In this case, the dispute involves matters beyond simple contract interpretation. Although the Complaint seeks enforcement of Schedules A and J, as

---

[4]The FERC has held, however, that where a finding for one party would require the FERC to reform a contract in order for the rate to be just and reasonable, such a dispute falls within the FERC's jurisdiction. *See Northern States Power Co. (Minnesota) v. Southern Minnesota Municipal Power Agency*, 55 F.E.R.C. ¶ 61,101 at 61,344 (1991).

7

Defendants point out, Section 8.01 of the FERC Tariff allows Defendants to terminate the Tariff effective December 31, 2008. Plaintiff's request for a declaration that Schedules A and J remain in effect appears contradictory to the Defendants' ability to terminate the Tariff at the end of 2008. In addition, as Defendants point out, if this Court were to declare that Schedules A and J are enforceable, there are no rates in place beyond 2008[5]. Plaintiff argues that this Court should, nevertheless, provide clarification on the issue of whether Defendants can terminate the Tariff effective December 2008. The Court disagrees. The relief sought would modify the terms of the parties' agreement. In addition, since there are no effective rates after 2008, the relief sought infringes on the exclusive jurisdiction of the FERC[6]. It is not this Court's function to determine rates or the reasonableness of such rates. Accordingly, the Court concludes that it is without subject matter jurisdiction over Plaintiff's complaint.

**IV.**

In light of the foregoing, the Defendants' Motion to Dismiss (**Doc. #8**) is **GRANTED**. This action is **DISMISSED**.

**IT IS SO ORDERED.**

3-31-2008
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff recognizes that FirstEnergy has the right to seek FERC approval for any rate starting in 2009. (*Memorandum contra* at 7).

[6] Under the Federal Power Act, the FERC has exclusive jurisdiction to determine the rates, and reasonableness thereof, for wholesale power. 16 U.S.C. § 824-824(e).

8